UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for First Bank of Idaho, | Case No. 1:14-cv-00310-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. |  |
| RICHARD J. COLEMAN, SHANNON B. CONKLIN, GLENN J. JANSEN, and RONALD J. KAYE, Jr., |  |
| Defendants. |  |

Before the Court is Defendants' Motion to Dismiss and for More Definite

Statement. (Dkt. 9.) The motion is fully briefed, and the Court heard oral argument on the

motion on January 22, 2015. For reasons explained more fully below, the motion will be

denied.

## BACKGROUND

Plaintiff the Federal Deposit Insurance Corporation ("FDIC-R"), acting in its

capacity as receiver for First Bank of Idaho ("First Bank"), filed a three-count Complaint

against Defendants Richard Coleman, Shannon Conklin, Glenn Jansen, and Ronald Kaye,

all of whom were former loan officers at First Bank. The FDIC-R seeks to hold

Defendants personally liable for over $11 million in damages, which First Bank allegedly

suffered due to Defendants' underwriting and recommendation of three loans (the

"Subject Loans"). In particular, the FDIC-R brings claims for (1) breach of fiduciary duty

under Idaho law; (2) negligence under Idaho law; and (3) gross negligence under both

Idaho law and the Financial Institutions Reform, Recovery, and Enforcement Act

(FIRREA), 12 U.S.C. § 1821(k).

1.      **Factual Allegations**[1]

First Bank was established in 1997 as a state-chartered bank. In 2001, First Bank

became a federally chartered stock savings association subject to regulation and

supervision by the federal Office of Thrift Supervision, with deposits insured by the

FDIC. The Bank was headquartered in Ketchum, Idaho, and had seven branches spread

across Blaine and Teton counties in Idaho and Teton County in Wyoming.  On April 24,

2009, the Office of Thrift Supervision closed First Bank and the FDIC was appointed

receiver under 12 U.S.C. § 1821(c).

Defendant Richard Colemen was First Bank's Senior Vice President and Senior

Credit Officer from October 2004 until First Bank's closure in April of 2009. Coleman

was the final reviewer and recommending authority for the three Subject Loans.

Defendant Shannon Conklin was a loan officer for First Bank from 2001 through March

of 2007. Defendant Glenn Jansen began working for First Bank in 2002 as a commercial

---

[1]      This statement of factual allegations is intended as background only and not as findings of fact.

loan officer and, in 2007, became President of First Bank's Jackson, Wyoming market division. Defendant Ronald Kaye joined the bank in 2002 and served as Vice President and loan officer at First Bank's Jackson, Wyoming branch until his resignation in May of 2007.

First Bank established a Credit Policy to guide its loan officers in "making sound credit judgments and protecting the major asset of the bank—its loan base." (Compl. ¶ 16, Dkt. 1.) The Credit Policy required a loan officer to review the prospective borrower's loan application, along with financial statements, and prepare a "Standard Credit Memo" that contained analysis of and recommendations on potential sources of repayment, key credit risks, and other factors. (*Id*.) Thus, First Bank used credit memos as "risk-surfacing" tools to support informed lending decisions. (*Id*. ¶ 17.)

Under the Credit Policy, each loan required the approval of First Bank's Credit Policy Committee ("CPC"). The CPC voted on a loan only if it was first recommended by the loan officers on the account, including the Senior Credit Officer, Coleman. If approval of a recommended loan would have violated the Credit Policy, the loan officer was required to request an exception to the policy and discuss any mitigating factors in the credit memo.

The three Subject Loans were approved by the CPC between May of 2005 and January of 2007. Defendants Coleman and Conklin were involved in underwriting and recommending two of these loans, a residential construction loan (the "Borrower A Loan") and a land acquisition and development loan (the "Sweetwater Loan").

Defendants Coleman, Jansen, and Kaye were involved in underwriting and recommending the third loan, a lot acquisition loan (the "Sage Loan").

The FDIC-R alleges that Defendants failed to follow prudent lending practices and First Bank's Credit Policy in underwriting and recommending the Subject Loans for CPC approval. (*Id.* ¶¶ 29, 36(a)–(f), 37, 45(a)–(h), 46, 54(a)–(h).) For example, the FDIC-R claims that proper underwriting on the Borrower A Loan would have uncovered, among other things, that the borrower had twice been convicted of fraud and that his projected income was largely attributable to notes receivable from unreliable sources. Another example is that the credit memo for the Sweetwater Loan failed to warn that the project was overleveraged or that the recommended loan terms violated First Bank's Credit Policy. And, with regard to the Sage Loan, the FDIC-R alleges that the credit memo misstated Sage Capital's financial condition and that Coleman, Jansen, and Kaye violated the Credit Policy by failing to obtain proper appraisals of the collateral, signed loan applications from the borrowers, and signed financial statements from the guarantors. It is further alleged that each Subject Loan required exceptions to the Credit Policy, which were not explained in the accompanying credit memos.

## 2.    Procedural History

The FDIC-R filed this lawsuit on July 29, 2014. Defendants waived service of process and, in September of 2014, filed the instant motion to dismiss. The motion requests dismissal the Complaint under Federal Rule of Civil Procedure 12(b)(6) or an order requiring the FDIC-R to provide a more definite statement of its claims. The parties

have consented in writing to have a Magistrate Judge conduct any and all proceedings in this case. (Dkt. 17); *see also* 28 U.S.C. § 636(c).

Defendants advance four arguments for dismissal.[2] First, Defendants claim the FDIC-R's claims are time-barred. Second, Defendants argue the business judgment rule precludes the FDIC-R's claims for breach of fiduciary duty and negligence. Third, Defendants assert that the FDIC-R failed to adequately plead gross negligence under Idaho law. Fourth, Defendants claim the FDIC-R's Complaint does not plead facts showing Defendants proximately caused the alleged damages.

The FDIC-R filed a response to Defendants' motion in early October of 2014. The response references a Tolling Agreement executed by the parties on March 14, 2012, as well as ten amendments purporting to extend the duration of the Tolling Agreement. Both the Tolling Agreement and its amendments are attached to the Declaration of Lorriane G. Hanson in Support of Plaintiff's Response to Defendants' Motion to Dismiss. (*See* Hanson Dec. ¶¶ 3–13, Dkt. 13-1.) The FDIC-R relies on the Tolling Agreement and its amendments to counter Defendants' argument that the FDIC-R's claims are time-barred.

Defendants' reply brief argued that any agreement to toll the statute of limitations would have no legal effect. Thereafter, the FDIC-R sought, and the Court granted, leave to file a surreply on the timeliness issue. In the surreply, the FDIC-R contends the Tolling

---

[2]     Defendants' opening brief also argues the Complaint contains improper group pleading. However, counsel for Defendants essentially abandoned that contention during oral argument. In any event, the Court finds the Complaint sufficiently identifies which Defendants were involved in committing each alleged wrong. *See FDIC v. Faigin*, No. CV 12-3448 DDP, 2013 WL 3389490, at *5 (C.D. Cal. Jul. 8, 2013). Accordingly, this argument is not analyzed below.

Agreement renders its claims timely and estops Defendants from asserting the statute of limitations as a defense.

## LEGAL STANDARD

Ordinarily, the Court looks only at the pleadings when evaluating a motion to dismiss under Rule 12(b)(6). *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). In circumstances not present here, the Court also may consider any documents attached to the pleadings, documents incorporated by reference, or matters subject to judicial notice without converting the Rule 12(b)(6) motion into one for summary judgment. *See id.* at 908–09. Otherwise, Rule 12(d) directs the Court to treat a motion to dismiss as a motion for summary judgment under Rule 56 if a party presents, and the Court does not exclude, extra-pleading materials on a motion to dismiss. The decision whether to exclude the extra-pleading materials or convert the motion is committed to the Court's discretion. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). If the Court decides to treat the motion as one for summary judgment, it must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the FDIC-R has submitted matters outside the pleadings—namely, the Tolling Agreement and its amendments—in connection with its opposition to the untimeliness allegation in Defendants' motion to dismiss. The Tolling Agreement is not referenced in or attached to the Complaint, nor is it subject to judicial notice. However, during oral argument, counsel for Defendants confirmed that Defendants do not dispute the authenticity of the Tolling Agreement or the amendments submitted by the FDIC-R.

The Court finds that considering the Tolling Agreement and its amendments for the limited purpose of resolving the parties' timeliness arguments will facilitate the "just, speedy, and inexpensive" determination of this action. Fed. R. Civ. P. 1. Therefore, the Court will apply the standards of Rule 56 to the timeliness argument in Defendants' motion to dismiss.

Under Rule 56(a), summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir.2010) (quoting *Anderson*, 477 U.S. at 248). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Because the Tolling Agreement pertains only to Defendants' timeliness argument, the Court will evaluate the remainder of Defendants' motion to dismiss under the Rule 12(b)(6) standards. A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a complaint under this Rule, all allegations of material fact are

taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* In other words, the complaint must plead "enough facts to state a claim of relief that is plausible on its face." *Id.* at 570.

## ANALYSIS

### 1.      The FDIC-R's claims are timely

Defendants first argue that the FDIC-R's claims are time-barred because FIRREA contains a four-year statute of repose that may not be altered by agreement. Defendants claim the FDIC-R's claims accrued no later than April 24, 2009, and that the Complaint was filed more than four years after that date. In response, the FDIC-R contends FIRREA contains a statute of limitations that could be, and was, suspended by the parties' Tolling Agreement. In the alternative, the FDIC-R argues Defendants are equitably estopped from asserting a timeliness defense, because the Tolling Agreement includes an express promise to waive any time-related defenses.

#### A.      *FIRREA's Extender Statute*

Section 1821(d)(14) of Title 12 of the United State Code governs the time for filing FDIC receivership claims. Often referred to as an "Extender Statute," *FDIC v.*

*Cameron*, 986 F.Supp.2d 1337, 1340 (N.D. Ga. 2013), the provision states in relevant part:

>  (A) In general
>
>  Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—. . .
>
>> (ii) in the case of any tort claim . . . the longer of—
>>
>>> (I) the 3-year period beginning on the date the claim  accrues; or
>>>
>>> (II) the period applicable under State law.
>
>  (B) Determination of the date on which a claim accrues
>
>  For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
>
>> (i) the date of the appointment of the [FDIC] as  conservator   or receiver; or
>>
>> (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). The parties agree that Idaho's four-year limitations period for negligence actions is the "period applicable under State law" referenced in § 1821(d)(14)(A). *See* Idaho Code § 5-224. The next step is to determine the date on which the statute of limitations begins to run under § 1821(d)(14)(B).

Although a literal reading of § 1821(d)(14)(B) might suggest otherwise, courts have interpreted the Extender Statute as not allowing the FDIC-R to "revive claims for which the state limitations period has expired before the date of federal receivership." *FDIC v. McSweeney*, 976 F.2d 532, 534 (9th Cir. 1992); *see also Resolution Trust Corp.*

*v. Krantz,* 757 F.Supp. 915, 921 (N.D. Ill. 1991) (reasoning that a literal reading of the statute would allow the FDIC-R to "revive claims relating to acts done during the Great Depression" by merely taking receivership of a bank). Thus, the Court must ascertain whether Idaho's four-year limitations period expired before the FDIC-R was appointed receiver on April 24, 2009. This, in turn, requires an examination of Idaho's law regarding accrual of negligence actions. *See McSweeney*, 976 F.2d at 536 (looking to state law to determine accrual date of FDIC-R's claims).

Under Idaho law, a negligence claim accrues once "some damage" has occurred due to the alleged negligent act. *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 873 P.2d 861 (Idaho 1994). In a case involving disbursement of a loan, the Idaho Supreme Court has held that "some damage" occurred when the "funds were allegedly wrongfully disbursed," not when the borrower defaulted. *Lapham v. Stewart*, 51 P.3d 396, 402 (Idaho 2002). Here, as in *Lapham*, First Bank suffered "some damage" from Defendants' alleged misconduct when it disbursed each of the Subject Loans. First Bank disbursed the earliest Subject Loan, the Borrower A Loan, on May 6, 2005, and the FDIC-R was appointed receiver within four years of that date. It is therefore apparent that the four-year limitations period for claims related to any of the Subject Loans did not expire before the date of federal receivership.

Because the FDIC-R's claims were not time-barred when it was appointed receiver, § 1821(d)(14)(B) operates to extend the limitations period an additional four years from the appointment date. Consequently, the extended limitations period ended on April 24, 2013. The FDIC-R acknowledges as much: "That four-year period re-started on

the date First Bank closed, April 24, 2009, and would have run on April 24, 2013 absent a tolling agreement." (Pl's Resp. Br. at 14, Dkt. 13.)

## B. *Effect of the Tolling Agreement*

The Court has before it the parties' Tolling Agreement, executed on March 14, 2012. (Tolling Agr., Dkt. 13-2.) It is undisputed that that true and correct copies of the Tolling Agreement and its ten amendments are before the Court. (*See* Hanson Dec. Dkt. 13-1.) Further, Defendants have not objected to the Court's consideration of the Tolling Agreement or its amendments.

The Tolling Agreement purports to create a "Tolling Period," which, by operation of the amendments, lasted from March 13, 2012, until July 16, 2014. (10th Tolling Agr. Amendment, Dkt. 13-15.) In addition, the parties agreed in these documents that "lawsuit(s) filed and commenced within fourteen (14) calendar days immediately following July 16, 2014 shall not be deemed time-barred." (*Id*. at 1.) According to the FDIC-R, the upshot of the Tolling Agreement is that its Complaint was timely filed on July 29, 2014.

Emphasizing the plain terms of the Extender Statute, Defendants argue that agreements to toll the § 1821(d)(14)(A) limitations period have no legal effect. Specifically, Defendants highlight the following language: "*Notwithstanding any provision of any contract*, the applicable statute of limitations with regard to any action brought by the [FDIC-R] shall be . . . in the case of any tort claim . . . the period applicable under State law."12 U.S.C. § 1821(d)(14)(A) (emphasis added). Defendants assert the phrase "Notwithstanding any provision of any contract" signals Congress's

intent to create a statute of repose—that is, to cut off liability by a date certain, thereby preventing parties from tolling the limitations period by agreement.

As the United State Supreme Court recently explained in *CTS Corp. v. Waldburger*, there are significant differences between statutes of limitation and statutes of repose. 134 S. Ct. 2175, 2183 (2014). A statute of repose "puts an outer limit on the right to bring a civil action" that "is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id*. On the other hand, a statute of limitations "creates 'a time for suing in a civil case, based on the date when the claim accrued.'" *Id*. (quoting Black's Law Dictionary 1546 (9th ed. 2009)). Critically, a statute of limitations may be tolled whereas a statute of repose may not, because the latter "is a judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'" *Id.* (quoting C.J.S. § 7, at 24).

Defendants base their statute of repose argument almost entirely on a recent decision by the District of Kansas, *Nat. Credit Union Admin. Bd. v. Credit Suisse Secs., LLC,* 939 F.Supp.2d 1113 (D. Kan. 2013) ("*NCUA*"). Construing the identically worded extender provision at 12 U.S.C. § 1787(b)(14), the *NCUA* court held the provision "evidences an intent to extinguish plaintiff's claim after lapse of the limitations period, and that period may not be waived or extended by a tolling agreement." 939 F.Supp.2d at 1126.

Notably, the *NCUA* court based its conclusion on the United States Supreme Court's interpretation of a different statute—the Interstate Commerce Act—which

provided that "[a]ll actions at law by carriers . . . for recovery of their charges . . . shall be begun within three years from the time of the action, and not after." *Midstate Horticultural Co., Inc. v. Penn. R. Co.*, 320 U.S. 356, 357 (1943). However, the *NCUA* court did not explain why the Supreme Court's interpretation of the Interstate Commerce Act should apply with equal force to the language of the extender provision. This undercuts *NCUA*'s persuasiveness, because, in *Midstate*, the Supreme Court explained that the "controlling question" was whether the policy behind the Interstate Commerce Act "contemplates one result of the other." 320 U.S. at 360.

Rather than addressing the policy of the extender provision as a whole, the *NCUA* court relied on the supposed plain meaning of only one clause—the "notwithstanding" clause. This lead the court find that "allowing plaintiff to enforce its tolling agreement through equitable estoppel would undermine [congressional] intent and render the 'notwithstanding' provision meaningless." *NCUA*, 939 F.Supp.2d at 1126.

The FDIC-R argues *NCUA* was wrongly decided. This argument finds support in at least five recent district court decisions, all of which disagree with *NCUA* and hold the Extender Statute is a statute of limitations subject to tolling. *FDIC v. Williams*, No. 13-883, 2014 WL 5073605, at *5–6 (D. Utah Oct. 8, 2014); *FDIC v. Bridges*, No. 13-347, slip op. (M.D. Ga. Sept. 30, 2014) *available at* (Dkt. 26-1 at 16–24); *FDIC v. Jones*, No. 13-168, 2014 WL 4699511, at *7 (D. Nev. Sept. 19, 2014); *FDIC v. Baldini*, No. 1:12-7050, 2014 WL 2581193, at *3 (S.D. W.Va May 6, 2014); *FDIC v. Kime*, 12 F.Supp.3d 1113, 1119–20 (S.D. Ind. 2014).

While the Ninth Circuit has not determined whether the "notwithstanding" clause creates a statute of repose, it has consistently used the term "statute of limitations" when discussing the Extender Statute at issue here. *See*, *e.g., Resolution Trust Corp. v. First Am. Bank*, 155 F.3d 1126, 1128 (9th Cir. 1998); *McSweeney*, 976 F.3d at 534; *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 486 (9th Cir. 1991). Cases from other circuits and the United States Supreme Court are in accord. *E.g.*, *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (noting that 12 U.S.C. § 1821(d)(14) "extend[s] statute of limitations beyond period that might exist under state law"); *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 334 (4th Cir.2000); *Resolution Trust Corp. v. Artley*, 28 F.3d 1099, 1101 (11th Cir.1994). Aside from the non-binding *NCUA* decision, Defendants do not cite any other authority suggesting that § 1821(d)(14)(A) should be read as a statute of repose.

There is good reason for this lack of support: The statute of repose reading is inconsistent with the text and structure of the Extender Statute. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("Over and over we have stressed that in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (quotation and alteration omitted)). One textual clue is that Congress used the term "statute of limitations" throughout the Extender Statute. The term appears in the title and four times in the text of the provision. 12 U.S.C. § 1821(d)(14). While not dispositive, this is instructive—especially because the Extender Statute expressly addresses when the FDIC-R's claims accrue. *See CTS Corp.*, 134 S. Ct. at 2185, 2187–88.

Statutes of repose operate regardless of claim accrual. *Id*. at 2187. It would therefore be incongruous for Congress to create a statute of repose in § 1821(d)(14)(A) and then provide instructions for determining claim accrual in the very next subsection, § 1821(d)(14)(B). If at all possible, the Court is to construe statutory provisions in a way that does not render other provisions superfluous. *United States v. 144,744 Pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005). Thus, the Extender Statute's wording and structure both evidence Congress's intent to establish a statute of limitations "notwithstanding any provision of any contract" purporting to set a different limitations period.[3]

The Tolling Agreement does not set a different limitations period. Instead, it provides that "any and all statutes of limitations . . . shall be tolled and *shall not run*" during the Tolling Period. (Tolling Agr. ¶ 4, Dkt. 13-2 (emphasis added).) This is consistent with the long-accepted notion that "tolling" denotes a suspension of—rather than a change to—the statute of limitations until some later event permits the statute to continue running. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 561 (1974), *accord Socop-Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir. 2001). Therefore, the Court finds

---

[3]    FIRREA's purpose and legislative history provide further evidence of Congress's intent to create a statute of limitations. Congress enacted FIRREA "in the face of a national banking crisis, with the intent of maximizing the recovery of assets that the federal receivers (FDIC, RTC) held in the failed banks they inherited." *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 456 (7th Cir.1999).  Indeed, Senator Donald W. Riegle, Jr., the statute's sponsor, explained on the Senate floor at the time of enactment: "The [Extender] provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989). Defendants' statute of repose interpretation would frustrate the policy of maximizing federal receivers' ability to recover the assets of failed banks.

FIRREA's Extender Statute does not void the Tolling Agreement in this case. By operation of that agreement and its amendments, the FDIC-R's claims are timely.

## C.    *Equitable estoppel*

Alternatively, the Court finds that the undisputed facts establish that Defendants are equitably estopped from raising a timeliness defense in this case. "The doctrine of estoppel has long been accepted as one of the bulwarks of equity in Anglo-American jurisprudence. Estoppel to plead the statute of limitations is often invoked on the broad general ground that parties may not take advantage of their own wrongs." *Allen v. A.H Robins Co.*, 752 F.2d 1365, 1371 (9th Cir. 1985) (applying equitable estoppel to the statute of limitations in Idaho Code § 5-219). Under Idaho law, "[e]stoppel may prevent a defendant from asserting the statutory bar when his representations or conduct dissuade a plaintiff from prosecuting his cause of action during the period of limitations." *Holmes v. Iwasa*, 657 P.2d 476, 480 (Idaho 1983). Estoppel applies if four elements are established:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon, and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 644 P.2d 341, 344 (Idaho 1982).

Here, the Tolling Agreement memorializes Defendants' express promise to "not challenge or contest the authority of the Parties to agree to suspend the running of, and to waive and not assert the defense of, any applicable statute of limitations, laches period, or other period related to timing as set forth herein." (Tolling Agr. ¶ 9, Dkt. 13-2.)

Defendants further promised to "expressly and knowingly waive any and all limitations, laches and any other time-related rights and/or defenses . . ., which would result from including any of the time period referred to herein as the Tolling Period." (*Id*. ¶ 4.)

Notwithstanding these promises, Defendants have challenged the validity of the Tolling Agreement and raised the applicable statute of limitations as a defense. It is reasonable to infer that Defendants' promises induced the FDIC-R to delay filing suit. Further, there is no evidence suggesting that the FDIC-R had any reason to believe that Defendants would not honor the Tolling Agreement. Thus, the undisputed facts before the Court establish that equitable estoppel applies and precludes Defendants from asserting the FDIC-R's claims are time-barred.

Therefore, the Court rejects the argument that the FDIC-R's Complaint is untimely.

**2.      The business judgment rule does not compel dismissal of the FDIC-R's breach of fiduciary duty and negligence claims**

Turning to the substance of the Complaint, Defendants argue that the FDIC-R's negligence and breach of fiduciary duty claims are foreclosed by the business judgment rule. As an initial matter, rebuttal of the business judgment rule is not an element of either claim. "In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (Idaho 2009). Likewise, the "essential elements" of a negligence claim require a plaintiff to establish: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct;

(2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quotation omitted).

There is no dispute that, as officers of First Bank, Defendants owed duties, fiduciary or otherwise, to First Bank. *See Jordan v. Hunter*, 865 P.2d 990, 996 (Idaho App. 1993) (discussing fiduciary duties of corporate officers). Rather, Defendants' position is that the FDIC-R alleged insufficient facts in the Complaint to establish a breach under either theory, because Idaho's business judgment rule creates a presumption that no breach occurred absent allegations of "bad faith, fraud, illegality, or gross overreaching by the Defendants." (Dkt. 9-1 at 11.) In effect, Defendants argue that Idaho's standard of liability for claims against bank officers is something greater than simple negligence.

This argument runs headlong into Idaho Code § 30-1-842, which establishes standards of conduct for corporate officers. In particular, a corporate officer must act "(a) [i]n good faith; (b) [w]ith the care that a person in a like position would reasonably exercise under similar circumstances; and (c) [i]n a manner the officer reasonably believes to be in the best interests of the corporation." Idaho Code § 30-1-842(1). Further, a corporate officer is entitled to rely on information received from third parties to the extent the reliance is reasonable under the circumstances. *Id.* § 30-1-842(2); *see also* § 30-1-831(i)(b)(ii)(B) (creating potential director liability for a decision "[a]s to which the director was not informed to an extent the director reasonably believed appropriate in the circumstances"). The requirement that officers act reasonably strongly implies a

simple negligence standard. While there is no reported Idaho case interpreting § 30-1-842, other courts confronted with virtually identical language have held that it creates a simple negligence standard. *E.g.*, *FDIC v. Christensen*, No. 3:13-cv-109-PK, 2013 WL 3305242, at *2 (D. Or. Jun. 28, 2013) (construing Or. Rev. Stat. § 60.377(1)).

On the other hand, Idaho recognizes that the common law business judgment rule "immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment." *Steelman v. Mallory*, 716 P.2d 1282, 1285 (Idaho 1986) (citations omitted). Defendants cite three Idaho cases recognizing the business judgment rule, but none of them apply the rule to bank loan officers specifically.[4] Further, none of the three cases explain how Idaho's statutory standards for officer conduct interact with the business judgment rule.

The *Steelman* case held that the business judgment rule did not immunize corporate directors from liability, because they "usurped corporate opportunity for their own benefit." 716 P.2d at 1286. Conversely, in *Leppaluoto v. Warm Springs Hollow Homeowners Ass'n, Inc.*, the Idaho Supreme Court held that the rule immunized a homeowner's association's board of directors from liability because the board acted "in a reasonable and prudent manner." 752 P.2d 605, 608 (Idaho 1988). And, while *Orrock v. Appleton* involved a shareholder's claims against both directors and officers of Micron

---

[4]     Other jurisdictions do not uniformly apply the business judgment rule to loan officers. *Compare FDIC v. Faigin*, No. CV 12-3448 DDP, 2013 WL 3389490, at *11 (C.D. Cal. Jul. 8, 2013) (finding the business judgment rule does not apply to officers under California law) *with FDIC v. Willetts*, No. 11-CV-165-BO, 2014 WL 4828330, at *4 (E.D.N.C. Sept. 11, 2014) (applying North Carolina's business judgment rule to bank officers).

Technology, Inc., the only mention of the business judgment rule in that case comes in a concurrence. 213 P.3d 398, 406 (Idaho 2009) (J. Jones, J., specially concurring). The *Orrock* majority found the claims deficient because the shareholder "insufficiently pled that demand on a majority of the Board at Micron would be futile." *Id*. at 403. None of these cases suggest that the business judgment rule demands special pleading or raises the standard of liability for loan officers.

Potential liability for simple negligence or breach of fiduciary duty is not inconsistent with the proposition that the business judgment rule "immunizes management from liability in a corporate transaction undertaken within both power of corporation and authority of management where there is reasonable basis to indicate that transaction was made in good faith." *Leppaluoto*, 752 P.2d at 608 (quoting Black's Law Dictionary 181 (rev. 5th ed. 1979)); *see also FDIC v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998) (explaining that, under Arizona's business judgment rule, gross negligence is the standard of liability when the rule applies and simple negligence is the standard of liability for conduct outside the rule's ambit).

Thus, even if Idaho's business judgment rule may apply to the decisions made by Defendants as loan officers, the issue remains whether the rule provides a defense under the facts of this case. Indeed, the Idaho Supreme Court has expressly recognized that "actions may fall under the business judgment rule, but those are issues of fact." *McCann v. McCann*, 275 P.3d 824, 832 (Idaho 2012). And, outside of Idaho, there is "overwhelming authority to support the FDIC-R's position that the business judgment rule is highly fact dependent and, therefore, inappropriate for consideration on a motion

to dismiss." *FDIC v. Baldini*, 983 F.Supp.2d 772, 783 (S.D. W.Va. 2013) (collecting cases).

Here, the parties dispute whether Defendants' conduct was a reasonable exercise of business judgment. The FDIC-R alleges Defendants failed to comply with First Bank's Credit Policy and to otherwise observe reasonable and prudent lending practices. (Compl. ¶¶ 29, 36(a)–(f), 37, 45(a)–(h), 46, 54(a)–(h), 55.) Even if Defendants assert the business judgment rule as a defense in their Answer, the record at this stage in the proceedings is insufficient to determine whether the rule applies to each Defendants' conduct. *See FDIC v. Willetts*, No. 11-CV-165-BO, 2014 WL 4828330, at *4 (E.D.N.C. Sept. 11, 2014) ("At [the motion to dismiss] stage, the Court could not know whether the business judgment rule shielded defendants' liability absent further factual development and declined to dismiss the case."). At this juncture, the Court must consider the non-conclusory allegations in the Complaint as true. So construed, the FDIC-R has stated plausible claims for breach of fiduciary duty and negligence under Idaho law.

**3.      The FDIC-R's claims are otherwise adequately pled**

Defendants also contend the FDIC-R did not adequately plead gross negligence and causation. Specifically, Defendants argue Idaho's gross negligence standard "equates" to recklessness, such that the Complaint must be dismissed because it does not allege Defendants were deliberately indifferent to harmful consequences. (Defs.' Mem. Supp. M. Dismiss at 11, Dkt. 9-1.) Defendants further argue that the FDIC-R's causation allegations are insufficient because the Complaint does not "allege sufficient facts that show the Defendants knew or should have known, at the time of the lending decisions

that their alleged deficiencies in underwriting would in fact result in losses to the Bank." (*Id.* at 16.)

### A.    *Gross negligence*

The parties agree that Idaho law sets the standard for gross negligence in this case. *See* 12 U.S.C. § 1821(k) (providing that bank officers may be personally liable for gross negligence "as such terms are defined and determined under applicable State law"); *see also Atherton v. FDIC*, 519 U.S. 213, 216 (1997) (holding state law sets the standard of care for bank officers, but § 1821(k) prohibits courts from applying a more "relaxed" standard than "gross negligence"). But, contrary to Defendants' argument that gross negligence and recklessness are equivalent, Idaho law confirms they are separate albeit related concepts.

The Idaho Supreme Court has repeatedly recognized that gross negligence entails a very high degree of negligence, whereas recklessness entails intentional disregard of a substantial risk of harm. *See S. Griffin Const., Inc. v. City of Lewiston*, 16 P.3d 278, 286 (Idaho 2000). Almost fifty years ago, the court explained:

> Reckless disregard includes gross negligence just as the greater includes the lesser. Gross negligence, however, need not include willfulness, or wanton or intentional disregard for the guest's safety, or conscious indifference to consequences; and there need not be an actual intent to inflict damage or injury.

*Hodge v. Borden*, 417 P.2d 75, 84–85 (Idaho 1966). More recently, the court acknowledged that "reckless misconduct is a form of negligence," but it differs from negligence insofar as it "involves both intentional conduct and knowledge of a substantial risk of harm." *Carrillo v. Boise Tire Co., Inc.*, 274 P.3d 1256, 1266 (Idaho 2012). The

Idaho Tort Claims Act also reflects this distinction. *Compare* Idaho Code § 6-904C(1) (defining "gross negligence") *with* Idaho Code § 6-904C(2) (defining "reckless, willful and wanton conduct").

These authorities demonstrate that Idaho law does not equate recklessness with gross negligence. It follows that the Complaint need not include allegations of deliberate, or intentional, indifference to harmful consequences, so long as the FDIC-R's allegations plausibly suggest Defendants acted with a very high degree of negligence in underwriting and recommending the Subject Loans for approval. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Assuming FDIC-R's allegations are true, the Complaint does just that.

The FDIC-R alleges that "Defendants' duty of care to First Bank included, among other things: conducting the business of First Bank in a manner consistent with safe and sound lending practices; using prudent procedures for underwriting and recommending loans for approval; underwriting and recommending loans for approval in accordance with First Bank's Credit Policy; and informing themselves and the CPC of all the material information reasonably available to them." (Compl. ¶ 79, Dkt. 1.) It further alleges that each Defendant committed numerous Credit Policy violations, failed to perform necessary due diligence, and failed to disclose material information in Credit Memos for the Subject Loans. (*Id.* ¶¶ 32–58.) By describing the challenged loan transactions, explaining why Defendants' conduct fell well below the applicable standard of care, and alleging that the conduct proximately caused First Bank's damages, the

FDIC-R adequately pled gross negligence under Idaho law and in accordance with the liberal standards of notice pleading.[5]

## B.     *Causation*

The Complaint alleges that First Bank suffered damages as a "direct and proximate result" of Defendants' conduct in connection with the Subject Loans. (*Id*. ¶¶ 68, 75, 82.) The clear import of these and other allegations is that First Bank would not have made, or suffered losses on, the Subject Loans had Defendants observed the applicable standards of care. (*Id*. ¶¶ 3, 4, 39, 48, 58, 66, 68, 70, 75, 77, 82.) Defendants argue these allegations are too conclusory to plead proximate causation.

Defendants cite two cases to support their argument, but neither addresses the standard for *pleading* causation. *See FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993) (affirming findings of fact made after a bench trial); *Zahl v. Krupa*, 927 N.E.2d 262 (Ill. App. 2010) (affirming summary judgment in favor of the defendant corporate directors, in part because evidence of what the directors knew in hindsight was not evidence of

---

[5]     Numerous courts across the country have reached the same conclusion after reviewing similar allegations. *See, e.g., FDIC v. Giannoulias*, 918 F.Supp.2d 768, 772 (N.D. Ill. 2013) (holding that allegations of insufficient underwriting, violations of loan policy, and failure to sufficiently analyze guarantor financial information and creditworthiness were sufficient to state a claim for gross negligence); *FDIC v. Baldini*, 983 F.Supp.2d 772, 786 (S.D. W.Va. 2013) (finding a plausible claim for gross negligence in allegations of loan policy violations and serious underwriting deficiencies); *FDIC v. Willetts*, 882 F.Supp.2d 859, 865–66 (E.D.N.C. 2012) (denying 12(b)(6) motion where complaint alleged that many loans were approved after an inappropriate level of review and where "multiple deficiencies with regard to each at issue [were identified], including improper structuring, insufficient repayment sources, inadequate or wrongly valued securities, loan policy violations, lack of feasibility studies, overstatement of value, insufficient underwriting, and insufficient appraisal bases."); *W Holding Co. v. Chartis Insur. Co. Puerto Rico*, 904 F.Supp.2d 169, 177 (D.P.R. 2012) (finding plausible gross negligence claim in allegations of "failure to obtain appraisals . . . in violation of bank policy," and "failure to heed and act upon escalating examiner and auditor warnings of deficiencies in commercial lending and administration").

what was foreseeable at the time of their alleged wrongful conduct). The FDIC-R, on the

other hand, cites two cases where courts found similar causation allegations sufficient to

withstand a motion to dismiss. In *FDIC v. Faigin*, the Central District of California

deemed the following allegation sufficient: "As a direct and proximate result of these

Defendants' gross negligence, the FDIC-R suffered damages in an amount to be proven

at trial, in excess of $100.6 million." No. CV 12-3448 DDP, 2013 WL 3389490, at *9

(C.D. Cal. Jul. 8, 2013). Likewise, in *FDIC v. Clementz*, the Western District of

Washington relied on *Faigin* to hold that causation was adequately pled through

allegations that the defendants' "wrongful actions and/or inactions caused loans to be

wrongfully made which were destined to fail, causing damages to" the bank. No. C13-

737MJP, 2013 WL 6513001, at *7 (W.D. Wash. Dec. 12, 2013). Defendants offer no

reason for the Court to disregard these decisions, both of which the Court finds highly

persuasive. Therefore, the Court finds that the FDIC-R adequately pled a causal

connection between each Defendants' alleged wrongful conduct and First Bank's alleged

damages.

## CONCLUSION

After considering the parties' Tolling Agreement and the applicable law, the Court

finds the FDIC-R's Complaint timely. Further, upon review of the FDIC-R's Complaint

and applicable law, the Court finds the FDIC-R has stated plausible claims for breach of

fiduciary duty, negligence, and gross negligence. The Complaint provides each

Defendant adequate notice of the claims against him or her, and adequately pleads

causation. Accordingly, the Court will deny Defendants' motion to dismiss.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and for More Definite Statement (Dkt. 9) is **DENIED**.

Dated: **February 05, 2015**

Honorable Candy W. Dale
United States Magistrate Judge